for argument, United States v. Spiros Panos. I do not have an appellate advocacy class coming up, but I'm happy to be here anyway. The plea in this case was involuntary and procured by ineffective assistance of counsel. Counsel here had an actual unwaivable conflict. This case is much more in line with the Cain case cited by the government in... Would he prefer to have his case go back and perhaps be indicted for obstruction also? Well, I would say that this case... That Mr. Panos did not receive a benefit from pleading to the plea agreement that he pled to. He'll appreciate the benefit more if he gets his plea back and he goes back and he gets indicted for obstruction loaning. Well, Your Honor, we still don't... It's the counsel's job to pass along... And I think Your Honor is referring to the disclosure of defense exhibits one week or so or two weeks before trial was supposed to commence. In this case, it's counsel's job to pass along and disclose the defense exhibits. If those defense exhibits are found to have contained fraudulent documents in them... Why do you say there was an actual conflict when the government was satisfied, the court was satisfied... That counsel did not know that these exhibits were fabricated and so that at most it was a potential conflict as opposed to an actual conflict? I understand, Your Honor. And I think if we back up one step, an actual conflict is in the present, a potential conflict is in the future. It's potential. It's hypothetical. But you're saying it was an actual conflict. I'm trying to find out why you say that given the government's position, the court's conclusion that counsel did not know that these exhibits were fabricated. Right. So why are you now saying there was an actual conflict? Yes. And I think my... Ponos has maintained that it was an actual conflict even in the plea withdrawal. But the reason why is the government... On October 29th, 2020. Yes. October 29th, 2020, one day after they filed a letter demanding authentication of these documents. The very next day, they come in and say, we don't suspect you, Mr. Fisher, the lawyer. We don't suspect you. They haven't done sufficient investigation. A further investigation may uncover and may implicate that lawyer. And so the lawyer... And if that were to happen, then it would become an actual conflict. But... And then perhaps they would have to do things differently. But... And didn't Mr. Ponos understand all of that? And the district judge did a very careful and thorough job to make sure that he understood all the risks and that he was indeed waiving them. There's no doubt that Judge Karras did a thorough job. What we're saying is that the interests diverge in that moment. And Fisher was... It could be very easily inferred that the lawyer pressured his client into taking the plea in order to forestall any further investigation, which the government concedes happened. So it was, we argue, more akin to something like the Cain case, where there was a present divergence. Now, in the Cain case, it is a little bit... It is distinguishable. They had been... The facts were allowed to develop a little bit more to the point that the lawyer was served with a grand jury subpoena at that point. But there was more of a lead time between the witness tampering in the Cain case and the grand jury subpoena. So here, things could have developed that way. But we clearly see Mr. Fisher pressuring his client into taking that plea that day. What should Judge Karras have done? Well... Relieved Mr. Fisher anyway, even though Mr. Panos was saying, no, I want him? I understand, Your Honor. And it's a very difficult position. And hindsight is 20-20. In the moment, perhaps, yes. I mean, there are choice of counsel cases. I mean, this court comes at this question from two directions. It comes at it from this ineffective assistance of counsel direction, where the client later says, I don't like my lawyer. And the court comes at it from the other direction, which is, the district court deprived me of my choice of counsel. And this court has said that a district court, and I will say, has discretion. And so Judge Karras did have discretion to kick Mr. Fisher off of the case. But there isn't... Wasn't an abuse of discretion for him not to, under the circumstances? At some point, he says, if I decide that these are waivable conflicts, you're going to waive any argument you can make later on? To say, oh, no, no, I want my plea back, because the advice Mr. Fisher gave me was tainted by this potential conflict? Do you understand that? And he says, yes, I understand. And I knew I was setting my own trap by saying the word discretion there. But, yes, I do. I think there was an abuse of discretion in that there was clearly a present divergence of interest. The fact that there was this colloquy, that's very helpful. It was a very in-depth colloquy. But within that colloquy, the client does say, look, I've spoken to my family. I've decided to take this plea. It becomes clear later on that the client and the lawyer were discussing a different plea the day before. They were discussing a plea that had three years lower guidelines the day before. It was clear in that colloquy that this was not exactly a considered decision. It wasn't made with the advice of his counsel. His counsel did not have the time to digest the information because the plea agreement was written that morning and was not even authorized by a supervisor at that point. There were facts that came out. And then there was another conflict that did come out that was waivable but not waived. And that has to do with the preparation. And it's not a garden variety, my lawyer is unprepared kind of argument. This had been raised months before in the spring of 2020. This hearing that we're talking about, the plea hearing, Cursio-slash-plea hearing happens October 29th, 2020. Mr. Panos, then Dr. Panos, had raised the issue of his lawyer's preparation earlier in the year and had laid the groundwork for perhaps proceeding pro se. So this was not a garden variety accusation and that was not covered by the court. So if the court has no further questions for me on this point, I will reserve my two minutes for rebuttal. Thank you. Good morning. May it please the court. My name is Marjorie Feinzig and I'm an assistant United States attorney in the Southern District of New York. I represent the government on this appeal and I represented the government in this case in the district court. I think it's very clear the district court did not abuse its discretion in denying Panos' motion to withdraw his guilty plea, mostly for the following reasons. Every argument that Mr. Spilkey just made is dispelled completely by the record. This was a potential conflict. Judge Karras. Can I just stop you for a second? So doesn't Fisher, though, himself initially present it as an actual conflict? When he is first bringing it to the court's attention, he doesn't describe it as a potential conflict. Yes, he is. He says it's an actual conflict, and part of why that matters in sort of judging whether or not there's a conflict is what we're concerned about is how is the attorney going to behave in light of the circumstances. So if the attorney himself is saying this is a conflict, this is essentially I'm concerned about this, this is bothering me, what have you, and then effectively there's discussion and the court sort of, I don't want to say convinces him, but kind of talks it out and says, well, no, this is actually a potential conflict. But what are we to make of the fact that the attorney himself, at least initially, said this is an actual conflict? Well, I think initially Mr. Fisher recognized that he was the person who submitted the exhibits. So at that moment, I think he was concerned that the government would take the view that he was involved. Understandably. Completely understandably. But the government, when it made its representation to him and then in court, that based on our knowledge of the case and our dealings for two years with a defendant and the evidence that we'd already uncovered, we did not believe he was complicit and that we did not intend to continue any kind of investigation relating to him. I don't think the court persuaded necessarily or was even trying to persuade Mr. Fisher that it wasn't an actual conflict. What the court was doing was, in a logical manner, going through the facts, explaining the law, and for the record and for all of us, making sure everyone understood why this was not in fact an actual conflict and that it was a potential conflict. Well, but if the government had decided to charge Spence with obstruction, then Fisher's definitely a witness, isn't he? Yes. Yes. But again, that would have been a down-the-road turn of events. The trial was starting the next week. There was no risk that this was going to come up in connection with the trial. So there was going to be no possibility that he would have been a witness at the trial. So even if someday the government continued an investigation, it's still a potential conflict, not an actual conflict. It was contingent on events that were going to take place later on. Okay. I think when I'm looking at page 64 of the appendix, it seems to say when he said, I have an actual conflict, it was in the context of whether there would be an obstruction adjustment as opposed to the whole thing. In connection with sentencing, in other words. Right. So again, it's a potential conflict because it's going to take place down the road. And there was no, at that point, it would depend on how things went. And even, I mean, frankly, even if there was no plea agreement and there was a hearing down the road, there are other ways to handle a conflict situation at that point. Was there an adjustment for obstruction? There was. That's what he agreed to in the plea agreement. So Judge Karras thoroughly addressed the conflict issue. Panos repeatedly stated that he wanted to go forward, and he wanted to go forward with Mr. Fisher as his attorney. And Judge Karras did not abuse his discretion in accepting the waiver and allowing Mr. Fisher to stay on the case at Mr. Panos' request. I think the record is also quite clear that Panos' guilty plea was voluntary, the proceeding complied in all respects with Rule 11, and Panos cannot establish that he received ineffective assistance from Mr. Fisher, nothing about Mr. Fisher's advice prejudiced Mr. Panos in any way. If the court has further questions, I'm happy to answer them. Otherwise, the government will rest on its brief, and I will sit down. Thank you. I've reserved two minutes, but I don't think I'll take that long. So as to Mr. Panos' repeated protestations that he said that he would continue with Fisher, it was clear that it was contingent. It was clear that it was contingent on reasons that he had discussed with his family. He makes out in Stockett 107, Exhibit F, this is the affidavit, or rather declaration, filed three months after the plea where he talks about the duress that he was under, and he was told that at trial he would not have the services of an expert because he couldn't afford it, even though CJA funds could have been made available to him. Mr. Fisher was a retained counsel. But more importantly, there was a threat that the further charges would be brought against his family members. And so he clearly says on the record, on October 29th, I'm doing this because I've discussed this with my family. He's discussed a different plea agreement with his family, and it's clear that it is contingent. He's sort of doing it with a sword of Damocles over his head. The government says that, you know, this is a down-the-road problem. He wouldn't be a witness at the trial. This is exactly why Fisher had an interest to forestall the investigation and stop it right there. That's exactly why. That makes their interests diverge. It's not exact. This would be a slight extension of the Cain case, but it is along the same lines. If things had materialized further, if the investigation was not cut off short by this guilty plea, Mr. Fisher would have at least been a witness, if not a target or subject. Did Spanos take the plea? With regard to the obstruction, what was Fisher's position before the court with regard to the obstruction enhancement? At sentencing? Yeah. So one week after the plea hearing, Fisher withdrew, and Mr. Ponos got CJA counsel, not me, another able one of my colleagues. And so his position did not come out, but Mr. Ponos was bound by the plea agreement at that point. He agreed to the two-point obstruction enhancement, and he also agreed to waive acceptance points. So he would have been better off, arguably, pleading to a pimentel and at least having that argument available to him. He wasn't allowed to do that because his lawyer was conflicted and also not prepared and did not have enough time to communicate with his client about this issue. All right. Thank you. All right. Thank you. Thank you both, and I will take these under advisement.